ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| EL PUEBLO DE PUERTO RICO<br><br>  Peticionaria<br><br>  v.<br><br>LUISA MARIA COLÓN PESTKA<br><br>  Recurrida | **TA2026CE00424** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Civil Núm.: D LA2023G0305<br><br>Sobre: A6.05 Portación, Transportación o Uso Armas de Fuego Sin Licencia |

Panel integrado por su presidenta, la Jueza Romero García, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 12 de junio de 2026.

Comparece ante nos el Pueblo de Puerto Rico por conducto de la Oficina del Procurador General de Puerto Rico (Ministerio Público o "parte peticionaria") y nos solicita que revisemos dos determinaciones emitidas por el Tribunal de Primera Instancia, Sala Superior de Bayamón. La primera, una *Resolución* notificada el 10 de marzo de 2026, mediante la cual el foro primario declaró *No Ha Lugar* a la petición de admitir como evidencia el arma de fuego objeto de una venta realizada, ante la falta de consentimiento de la Sra. Luisa M. Colón Pestka (señora Colón o "la recurrida"). La segunda determinación, una *Resolución* notificada el 16 de marzo de 2026, en la cual el foro *a quo* denegó la autenticación del video por entender que la parte peticionaria no

---

[1] Ver Orden Administrativa OATA-2026-044 del 4 de mayo de 2026.

cumplió con los criterios de la Regla 901(B)(13) de Evidencia.

Por los fundamentos que expondremos a continuación, **EXPEDIMOS** el recurso de *certiorari* y **REVOCAMOS** las determinaciones recurridas.

**I.**

Por hechos ocurridos el 7 de junio de 2022, el Ministerio Público presentó tres acusaciones contra la recurrida, los cuales se desglosan como sigue: (1) Artículo 6.02 - fabricación, importación, venta y distribución de armas de fuego de la *Ley de Armas de Puerto Rico de 2020*, 25 LPRA sec. 466a; (2) Artículo 6.05 - portación, transportación o uso de armas de fuego sin licencia de la *Ley de Armas de Puerto Rico de 2020*, 25 LPRA sec.466d; y (3) Artículo 6.22 - fabricación, distribución, posesión y uso de municiones; importación de municiones de la *Ley de Armas de Puerto Rico de 2020*, 25 LPRA sec. 466u.[2] En síntesis, la recurrida fue imputada de haber transportado y vendido una pistola de la marca Kahr, para la cual no tenía licencia, a un agente encubierto. A su vez, fue imputada de haber transportado y vendido la cantidad de ciento cuarenta y ocho (148) municiones de calibre .380 al agente encubierto.

Luego de varios incidentes procesales, el juicio por tribunal de derecho comenzó el 17 de febrero de 2026, continuando los días 18, 19, 20 y 23 de febrero de 2026; y el 11 de marzo de 2026.

El 3 de marzo de 2026, la señora Colón presentó *Moción en Cumplimiento de Orden*, en el cual incluyó un

---

[2] Véase, anejo 1 en el recurso de *certiorari* en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

*Memorando de Derecho* en donde expuso las razones por las cuales la prueba presentada por el Ministerio Público resultaba inadmisible en derecho.[3] En esta, alegó que la parte peticionaria no logró justificar la entrada a su hogar sin orden judicial, ni con su consentimiento. Sostuvo que, el Informante NIE-SJ-TF-2019-007 (Informante-007), admitió que no tenía el consentimiento de la señora Colón antes de entrar al hogar, ni una orden de registro y allanamiento. Asimismo, señaló que el Encubierto AE-11-6-SSF-058 (Encubierto-058), tampoco tenía el consentimiento de la recurrida antes de entrar, y el único consentimiento había sido por parte del Informante-007, aunque dicha alegación fue objetada como prueba de referencia. Por ello, reiteró que al haber sido la entrada a su hogar sin orden y sin un consentimiento válido, procedía la supresión de toda evidencia y testimonio.

Por su parte, el 4 de marzo de 2026, el Ministerio Público presentó una *Moción en Cumplimiento de Orden*.[4] Mediante esta, señaló que el consentimiento requerido para que un informante y agentes encubiertos entren a una propiedad para llevar a cabo una transacción u operación, puede ser expreso o tácito (implícito). Por ello, resaltó que la señora Colón había dado su consentimiento implícito para que el Informante-007 y el Encubierto-058 entraran a la propiedad donde la recurrida vendió una pistola, municiones y su baqueta. Añadió, que la recurrida no protestó a que el Encubierto-058 entrara a la propiedad, y dentro de la casa entregó la evidencia. A su vez, arguyó que no medió fuerza o

---

[3] Véase, anejo 10 en el recurso de *certiorari* en SUMAC.
[4] Véase, anejo 11 en el recurso de *certiorari* en SUMAC.

violencia por parte del Informate-007 ni del Encubierto-058 para que pudieran entrar, por lo que, la recurrida actuó libre y voluntariamente. Finalmente, señaló que el video tomado por el propio encubierto en la transacción, es prueba ilustrativa de lo que se percibió y constituía evidencia real sobre el delito.

El 10 de marzo de 2026, el foro primario notificó una *Resolución*, mediante la cual declaró no ha lugar la petición de admitir el arma de fuego como evidencia.[5] Señaló que, si una transacción se llevaba a cabo en un lugar donde la persona tiene una expectativa de intimidad, le corresponde al Ministerio Público demostrar la existencia de alguna de las excepciones a una orden judicial. Asimismo, dispuso que, en cuanto a las transacciones encubiertas no hay otra excepción que no sea la de obtener el consentimiento, expreso o tácito, de la persona acusada. No obstante, determinó que al evaluar el testimonio del Informante-007 se demostró que no había consentimiento por parte de la recurrida para entrar a la casa. Añadió que, los hechos expuestos no fueron suficientes para determinar que el Ministerio Público había cumplido con su deber de demostrar la existencia del consentimiento.

Posteriormente, el 16 de marzo de 2026, el foro recurrido notificó una *Minuta Resolución*. En esta, determinó que el Ministerio Público no había logrado demostrar la confiabilidad e integridad del sistema donde se guardó el video, puesto que, la computadora donde se había guardado la evidencia estaba bajo la custodia de una persona que no era testigo de cargo ni

---

[5] Véase, anejo 2 en el recurso de *certiorari* en SUMAC.

demostró un adecuado mantenimiento de equipo. Por lo tanto, concluyó que la prueba presentada no era suficiente para admitirla bajo la Regla 901(B)(13) de Evidencia. Sin embargo, expresó que bajo la Regla 901(B)(1) de Evidencia, el video sería admisible puesto que mediante el testimonio del Encubierto-058 demostraron conocimiento personal sobre las imágenes reflejadas en el video. No obstante, de igual forma denegó la petición por haber sido obtenido bajo un registro ilegal.

El 25 de marzo de 2026, el Ministerio Público presentó una *Moción de Reconsideración*.[6] En esencia, reiteró que la señora Colón había dado su consentimiento implícito para que entraran a la casa, como también realizó manifestaciones que dieron a entender que tenía dominio y control sobre la propiedad. A su vez, esbozó que había sido la recurrida quien expuso el arma de fuego, por lo que, no hubo una expectativa de intimidad. Finalmente, señaló que el video tomado por el agente encubierto, al ser perceptible a los sentidos del propio agente, era admisible en evidencia al ser prueba demostrativa.

No obstante, el 26 de marzo de 2026, el foro primario notificó una *Resolución* en la que denegó la moción de reconsideración.[7]

Aun inconforme, el 8 de abril de 2026, el Ministerio Público presentó el recurso de epígrafe, mediante el cual planteó los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia al no admitir como prueba de cargo el arma de fuego Kahr, modelo CW380, número de serie RH6023, calibre 380, y suprimirla y

---

[6] *Íd*.
[7] Véase, anejo 15 en el recurso de *certiorari* en SUMAC.

concluir que la señora Colón Pestka no consintió a que la agente encubierta AE-11-6-SSF-058 y el confidente NIE SJ-TF 2019-007 entraran a su residencia, cuando los hechos reflejan que, bajo la totalidad de las circunstancias, hubo un consentimiento tácito para la presencia de ambos por parte de la recurrida.

Erró el Tribunal de Primera Instancia al descartar que la entrada consentida de un agente encubierto a la propiedad de un ciudadano con el fin de realizar una transacción ilícita no configura una violación a la protección constitucional contra registros y allanamientos irrazonables, toda vez que no existe una expectativa de intimidad bajo estas circunstancias.

Erró el Tribunal de Primera Instancia al no admitir y suprimir como prueba de cargo el video de la transacción ilícita que, utilizando su propio equipo videográfico, la agente encubierta AE-11-6-SSF-058 tomó en la residencia de la señora Colón Pestka —Identificación 6 del Ministerio Público—, y el cual constituye prueba demostrativa e ilustrativa; ello, tras determinar que este no fue debidamente autenticado por incumplimiento con la Regla 901 (B)(13) de Evidencia, *supra*, y bajo el fundamento de que la recurrida no consintió a que la agente entrara a la propiedad.

En la misma fecha, la parte peticionaria presentó *Urgente Solicitud de Auxilio de Jurisdicción y Solicitud de Paralización de Juicio*.

El 9 de abril de 2026, emitimos una *Resolución* en la que ordenamos la paralización de los procedimientos y le concedimos un término a la parte recurrida para que presentara su postura en cuanto al recurso.

El 18 de abril de 2026, la señora Colón presentó su *Oposición a Expedición de "Urgente Petición de Certiorari"*.

Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

**II.**

**-A-**

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163 (2020); *Pueblo v. Díaz de León*, 176 DPR 913 (2009). En particular, es un recurso mediante el cual se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez*, supra. Así pues, la determinación de expedir o denegar un recurso de *certiorari* está enmarcada en la discreción judicial. *800 Ponce de León v. AIG*, supra. Es decir, la característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023). No obstante, la discreción judicial para expedir o no el auto de certiorari solicitado no ocurre en un vacío ni en ausencia de unos parámetros. *Torres González v. Zaragoza Meléndez*, supra.

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR ___ (2025), señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de certiorari. *Torres*

*González v. Zaragoza Meléndez*, supra. En lo pertinente, la precitada disposición reglamentaria dispone:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, se debe utilizar con cautela y por razones de peso. *Pueblo v. Díaz de León*, supra.

Ahora bien, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la discreción significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *Pueblo v. Rivera Santiago*, 176 DPR 559 (2009); *García v. Padró*, 165 DPR 324 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente

atado al concepto de la razonabilidad." *Pueblo v. Ortega Santiago*, 125 DPR 203 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *BPPR v. SLG Gómez-López*, supra; *Pueblo v. Rivera Santiago*, supra; SLG Flores, *Jiménez v. Colberg*, 173 DPR 843 (2008).

-B-

El Artículo II, Sección 10, de la Constitución del Estado Libre Asociado de Puerto Rico establece:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
>
> No se interceptará la comunicación telefónica.
>
> Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar o registrarse, y las personas a detenerse o las cosas a ocuparse.
>
> Evidencia obtenida en violación de esta sección será inadmisible en los tribunales. Const. de PR, Art. II, Sec. 10, LPRA, Tomo I.

Por su parte, la Enmienda IV de la Constitución de los Estados Unidos consagra el derecho de todo ciudadano a ser protegido contra registros y allanamientos irrazonables. Const. EE.UU., LPRA, Tomo I. De ordinario, se prohíbe el arresto de personas o registros o allanamientos sin una previa orden judicial, apoyada la misma en una determinación de causa probable. *Pueblo v. Serrano Reyes*, 176 DPR 437, 443 (2009); *Pueblo v. Calderón Díaz*, 156 DPR 549, 555 (2002). Todo registro, allanamiento o incautación de material de contrabando

que realice el Estado se presume irrazonable cuando se realiza sin orden judicial previa. *Pueblo v. Serrano Reyes*, supra, a la pág. 447; *ELA v. Coca Cola Bott. Co.*, 115 DPR 197, 207 (1984); *Katz v. United States*, 389 US 347 (1967). Además, si la actuación del Estado constituye un registro, es necesario determinar si la persona afectada tenía una expectativa de intimidad sobre el lugar o artículo a ser registrado y si tal expectativa es razonable a la luz de los criterios prevalecientes en la sociedad. *Pueblo v. Díaz, Bonano*, 176 DPR 601, 612 (2009); *Pueblo v. Santiago Feliciano*, 139 DPR 361, 384 (1995).

Sin embargo, aunque la ausencia de una orden judicial previa active una presunción de irrazonabilidad no significa que el promovente solamente deba descansar en tal fundamento. El Tribunal Supremo de Puerto Rico ha establecido que una solicitud de supresión de evidencia deberá exponer "los hechos precisos o las razones específicas que sostengan el fundamento o fundamentos en que se basa la moción de supresión presentada." *Pueblo v. Serrano Reyes*, supra; *Pueblo v. Blase Vázquez*, 148 DPR 618, 633 (1999); *Pueblo v. Maldonado, Rosa*, 135 DPR 563, 569 (1994).

A su vez, la norma constitucional que prohíbe el registro sin orden judicial previa no es absoluta ni confiere derechos irrestrictos. En *Pueblo v. Nieves Vives*, 188 DPR 1, 13 (2013), el Tribunal Supremo de Puerto Rico reiteró dicha norma:

> Ahora bien, el requerimiento constitucional de previa orden judicial no es absoluto, existen excepciones donde se ha reconocido la validez de un registro o arresto sin una orden. La Asamblea Constituyente reconoció expresamente que la garantía aludida frente al arresto tiene su límite en la conducta

criminal. Así, hemos reconocido en la Regla 11 de Procedimiento Criminal, 34 LPRA Ap. II, que un agente del orden público puede realizar un arresto sin previa orden judicial. Esta regla establece que un funcionario del orden público puede hacer un arresto sin la orden correspondiente: (a) cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia, (b) cuando la persona arrestada hubiese cometido un delito grave, aunque no en su presencia, y (c) cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave, independientemente de que dicho delito se hubiere cometido o no en realidad.

Asimismo, existen distintas circunstancias en las cuales un registro sin orden resulta constitucionalmente permisible, conforme a nuestro ordenamiento. Véase, *Pueblo v. Cruz Torres*, 137 DPR 42, 47 (1994). Entre las circunstancias excepcionales bajo las cuales se autoriza el registro sin orden judicial previa, por no existir una expectativa razonable de intimidad, se encuentran: (1) registro y allanamiento de estructuras abandonadas; (2) registro de evidencia abandonada o arrojada por la persona; (3) registro incidental a un arresto si el área registrada está al alcance inmediato del sujeto y el propósito es ocupar armas o instrumentos que pueden ser utilizados por el arrestado para agredir a los agentes o intentar una fuga, o para evitar destrucción de evidencia; (4) evidencia a plena vista; (5) evidencia en campo obscuro; (6) circunstancias de emergencia; (7) registro tipo inventario para salvaguardar el contenido del vehículo y proteger a la policía y al dueño del vehículo; (8) evidencia obtenida en el transcurso de una persecución; (9) evidencia obtenida durante un registro administrativo en una actividad altamente reglamentada por el Estado; y (10) cuando el registro es consentido directa o indirectamente. *Pueblo v. Bonilla*, 149 DPR

318, 333-334 (1999). Véase, además: *Pueblo v. Blase Vázquez,* supra, págs. 631-632 n.9.

Por su parte, la Regla 234 de Procedimiento Criminal, 34 LPRA Ap. II R. 234, establece el mecanismo procesal por medio del cual una persona agraviada por un registro o allanamiento ilegal puede solicitar la supresión de la evidencia obtenida como producto de dicha intervención. En cuanto a la jurisprudencia interpretativa de la Regla 234 de Procedimiento Criminal, *supra*, el Tribunal Supremo de Puerto Rico ha señalado que cuando se trata de evidencia incautada sin que mediase una orden judicial, el tribunal estará obligado a celebrar una vista evidenciaria si en la solicitud el promovente aduce hechos o fundamentos que reflejan la ilegalidad o irrazonabilidad del registro o allanamiento. Ante dicha circunstancia, el Ministerio Público estará obligado a refutar la ilegalidad del registro y le corresponderá establecer los elementos que sostienen la excepción correspondiente. *Pueblo v. Rivera Colón*, 128 DPR 672, 682 (1991); *Pueblo v. Rivera Rivera,* 117 DPR 170, 177 (1986).

Por otro lado, con relación al *testimonio estereotipado*, el Tribunal Supremo de Puerto Rico lo definió como aquel testimonio que se ciñe a establecer "los elementos mínimos necesarios para sostener un delito sin incluir detalles imprescindibles para reforzarlos." *Pueblo v. Camilo Meléndez*, 148 DPR 539, 558 (1999), citando a *Pueblo v. Rivera Rodríguez*, 123 DPR 443, 480 (1989). A su vez, el Tribunal Supremo de Puerto Rico señaló que la "convicción no puede fundarse en el testimonio único del agente encubierto cuando la declaración se limita a relatar los particulares mínimos

para establecer la infracción." *Pueblo v. Álamo Álamo*, 116 DPR 673, 675 (1985).

Resulta importante señalar que para considerar como estereotipado un testimonio lo importante no es si la situación descrita es común, sino si el testimonio es descarnado, escueto o exento de detalles. En consecuencia, el testimonio estereotipado debe: (1) ser escudriñado con especial rigor; (2) tanto los casos de evidencia abandonada o lanzada al suelo como los casos del acto ilegal a plena vista deben, en ausencia de otras consideraciones, inducir sospecha de la posible existencia de testimonio estereotipado; (3) cuando el testimonio es inherentemente irreal o improbable debe rechazarse; (4) puede perder su condición de tal si, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámite y otros detalles; (5) la presencia de contradicciones o vaguedades en el testimonio debe tender a reforzar el recelo con que hay que escuchar esta clase de declaraciones. Véase, *Pueblo v. De Jesús Mercado,* 188 DPR 467, 482 (2013); *Pueblo v. Camilo Meléndez*, supra, pág. 559.

-C-

La evidencia demostrativa es aquella evidencia que es perceptible a los sentidos. R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, Ed. SITUM, 2015, pág. 609. La Regla 1101 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 1101, establece que:

> Siempre que un objeto perceptible a los sentidos resultare pertinente de conformidad a lo dispuesto en la Regla 401,

dicho objeto, previa identificación o autenticación, es admisible como prueba, sujeto ello a la discreción del Tribunal de conformidad con los factores o criterios establecidos en la Regla 403.

Nuestro Tribunal Supremo ha expresado que existen dos tipos de evidencia demostrativa: la real y la ilustrativa. *Pueblo v. Nazario Hernández*, 138 DPR 760, 774 (1995). La evidencia demostrativa real es aquella evidencia que "juega un papel central y directo en el asunto que sea objeto de la controversia." *Íd*. Mientras que, la evidencia demostrativa ilustrativa se enfoca en "enseñar, instruir, representar o hacer más comprensible un testimonio u otra evidencia." *Íd*.

Para que la evidencia demostrativa sea admisible, debe cumplir con el procedimiento establecido en las Reglas de Evidencia de Puerto Rico. *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 811 (2020). Por ello, en primer lugar, toda evidencia que se pretenda presentar en la corte debe ser pertinente. *Íd*. La Regla 401 de Evidencia de Puerto Rico, establece que la evidencia pertinente es aquella que tiende a hacer la existencia de un hecho, con consecuencias para la adjudicación de la acción, más probable o menos probable de lo que sería sin tal evidencia. 32 LPRA Ap. VI, R. 401.

Luego de demostrar que la evidencia demostrativa es pertinente, esta tiene que cumplir con el procedimiento de autenticación para que sea admitida. *Rosado Reyes v. Global Healthcare,* supra, pág. 812. El procedimiento de identificación o autenticación de evidencia demostrativa está regulado por la Regla 901 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 901. En específico, la referida regla dispone que el requisito

de autenticación o identificación de evidencia se satisface mediante la presentación de evidencia suficiente para sostener una determinación de que el objeto en cuestión es lo que la persona promovente sostiene que es. *Íd*. En el inciso (b) de la Regla 901, *supra*, se enumeran algunos ejemplos de cómo realizar la autenticación o identificación de un objeto, entre estos: (1) el testimonio por testigo con conocimiento; (2) autenticación mediante evidencia de la letra; (3) identificación de voz; (4) conversaciones telefónicas; (5) escritos antiguos o compilación de datos; (6) escritos en contestación; (7) contenido de escritos; (8) autenticación mediante admisión; (9) testamento; (10) características distintivas; entre otros.

El testimonio de un testigo con conocimiento de que la evidencia es lo que el proponente sostiene que es constituye el "medio más elemental o fundamental de autenticar una evidencia […]". E.L. Chiesa Aponte, *Compendio de Evidencia (En el Sistema Adversarial)*, Ed. Tyrant Lo Blanch, México, 2021, pág. 528.

En cuanto a la evidencia electrónica, la misma comprende "aquella información que es creada, almacenada o compartida a través de un dispositivo o sistema electrónico". *Rosado Reyes v. Global Healthcare*, supra, pág. 811. Para autenticar una pieza de evidencia electrónica, puede hacer falta el testimonio pericial. No obstante, cuando se trata de tecnología cuyo uso se ha generalizado y está accesible a los legos -como, por ejemplo, archivos de computadora, mensajes de texto, correos electrónicos- no es necesario el testimonio pericial para autenticar dicha pieza. Emmanuelli Jiménez, *op. cit.*, pág. 565. Véase, además: *Rosado Reyes*

*v. Global Healthcare,* supra, págs. 813-814. Sobre ello, nuestro Tribunal Supremo ha resuelto que la evidencia electrónica se podrá autenticar mediante los mecanismos comunes utilizados en los litigios, a saber: (1) autenticación mediante características distintivas y (2) autenticación mediante el testimonio de un testigo con conocimiento. *Íd*. Específicamente, Emmanuelli Jiménez sostiene lo siguiente:

> […] a pesar de todas las contingencias que pueden incidir en la integridad y confiabilidad de la prueba electrónica, una cosa es su autenticación, que requiere solo evidencia suficiente para sostener que el asunto en cuestión es lo que el proponente sostiene, y otra cosa es el valor probatorio de la evidencia. Una vez satisfecho el criterio de autenticación y no existiendo regla de exclusión como prueba de referencia o privilegios, la evidencia electrónica se puede admitir. Cualquier duda sobre el origen, contenido o manipulación posterior de dicha prueba electrónica podría ir dirigida al proceso de estimación del valor probatorio. R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño,* Ed. SITUM, 2016, pág. 566.

## III.

En el caso de autos, el Ministerio Público en su recurso esbozó tres señalamientos de error alegadamente cometidos por el foro de instancia. En esencia, sostiene que incidió el Tribunal al suprimir como prueba de cargo el arma de fuego y el video de la transacción ilícita, tras concluir que la parte recurrida no había consentido a que el agente encubierto entrara a la propiedad. A su vez, menciona que el foro primario cometió un error en su apreciación de la prueba, dado que no consideró adecuadamente los testimonios ofrecidos por el Encubierto-058 y el Informante-007.

El Ministerio Público reconoce que la señora Colón no manifestó explícitamente que los agentes encubiertos

y el confidente entraran a la residencia. Sin embargo, resaltan que la recurrida salió de la residencia y solicitó ayuda para mover unos adornos que tenía en el "closet" del cuarto. Por ello, insisten en que dicho acto constituyó un consentimiento válido a favor de que el confidente accediera a la residencia.

En cuanto a la inadmisibilidad del video, el cual mostraba la transacción de la venta del arma, enfatizan que superaron la barrera de la autenticación a través del testimonio del testigo con conocimiento. Por ello, arguyen que, al tratarse de una prueba ilustrativa, era innecesario pretender que la autenticación se rigiera por los mismos parámetros que aplican a la evidencia demostrativa real.

Por su parte, la señora Colón reitera que del mismo testimonio del confidente surgió que ni él ni los agentes encubiertos obtuvieron su consentimiento para entrar a su residencia. Añadió que, la mera falta de protesta no equivale a una renuncia válida a la protección constitucional del hogar. Por lo que, reclama que el consentimiento implícito no permite que el Estado sustituya prueba de autorización por la mera ausencia de oposición expresa. Así pues, alega que aun cuando solicitó ayuda al confidente para bajar unos adornos del "closet", y dicho acto pudiera sugerir autorización para que el confidente accediera al interior de la residencia, no significaba que también autorizaba la entrada a los agentes encubiertos. Así pues, insiste en que la constitucionalidad de la entrada tiene que evaluarse al momento en que esta ocurre, no a partir de la conducta subsiguiente de la ocupante.

De otra parte, en cuanto a la admisibilidad del video, enfatiza que el problema no fue sólo de autenticación, sino además de admisibilidad constitucional. Por lo que, alega que el hecho de que el video pudiera ilustrar o corroborar el testimonio de la agente, no resolvía la cuestión anterior de si la agente tenía derecho a estar grabando.

La controversia principal exige que evaluemos si la evidencia ocupada fue producto de un registro ilegal o si, por el contrario, la recurrida prestó un consentimiento implícito el cual derrotó su expectativa de intimidad.

Conforme surge del Artículo II, Sección 10 de la Constitución de Puerto Rico este activa la protección contra registros, incautaciones y allanamientos irrazonables al hogar. No obstante, dicha protección no es absoluta. El Tribunal Supremo de Puerto Rico ha expresado que la protección contra registros y allanamientos irrazonables puede ser renunciada mediante el consentimiento, el cual puede ser expreso o implícito. *Pueblo en interés menor N.O.R.*, 136 DPR 949; *Pueblo v. Narváez Cruz*, 121 DPR 429 (1988). Para que el consentimiento implícito sea válido, se toman en consideración los siguientes factores: 1) si ha mediado fuerza o violencia, 2) si se efectuó el registro después de practicado un arresto, y 3) si se encontraban otras personas presentes. *Pueblo v. Seda*, 82 DPR 719; *Judd v. United States*, 190 F.2d 649, 651; *United States v. Gross,* 137 F.Supp. 244 (1956); *United States v. Reckis*, 119 F. Supp. 687 (Mass. 1954).

En el presente caso, es forzoso concluir que la señora Colón consintió implícitamente a la interacción

con los agentes encubiertos y el confidente, despojando su residencia de la protección constitucional. Según surge del expediente del caso, la propia recurrida había acordado previamente que la transacción se llevaría a cabo en su residencia, sabía a qué iban y los estaba esperando. A su vez, su comportamiento no fue el de una persona cuya intimidad estaba siendo violentada, sino era el de una persona activa en una transacción "comercial", en la cual no medió intimidación, fuerza, ni amenaza alguna por parte de los agentes encubiertos. Al contrario, según describieron los testigos en el juicio, la señora Colón mostró un estado de ánimo "normal" y "coherente". La recurrida extrajo el arma de un bulto negro de manera voluntaria, la limpió y se la entregó al Encubierto-058, realizado el intercambio de dinero, la recurrida les ofreció conseguir todas las armas que querían. Así pues, la recurrida permitió convertir su hogar en un espacio para la venta e intercambio de armas de fuego, invitando implícitamente a los supuestos compradores a consumar la compraventa del arma.

En síntesis, en ningún momento medio fuerza, violencia o intimidación por parte de los agentes encubiertos. La intervención no se dio en un contexto de arresto o custodia. Por el contrario, la interacción fluyó en un ambiente que los propios testigos en el juicio describieron como "normal" y la recurrida mostró un estado de ánimo "coherente". Además, se encontraban terceras personas en la residencia.

Por lo tanto, la renuncia a la expectativa de intimidad quedó evidenciada por los actos de la propia recurrida. Una vez los agentes ingresaron a la

residencia, fue ella quien voluntariamente extrajo el arma del bulto y se la entregó al Encubierto-058 a cambio del dinero. Asimismo, la señora Colón confirmó que todas las balas estaban en su empaque, ofreció venderles la "baqueta" y conseguirles más armas.

Por consiguiente, al no haber un registro, incautación o allanamiento ilegal, no se activa la regla de exclusión de rango constitucional ni procede la supresión de la evidencia, por lo que, tanto el arma como el video de la transacción tomado por el Encubierto-058, resultan admisibles en derecho.

## IV.

Por los fundamentos expuestos anteriormente, **EXPEDIMOS** el auto de *certiorari* y **REVOCAMOS** los dictámenes recurridos. Por consiguiente, se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones